***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERNADETTE MONTGOMERY, | : |
| Plaintiff, | : Civil Action No. 3:19-cv-19948-FLW-DEA |
| v. | : |
| BRISTOL-MYERS SQUIBB CO., | : OPINION |
| Defendant. | : |

**WOLFSON, Chief Judge:**

Plaintiff Bernadette Montgomery (hereinafter, "Plaintiff") filed this action against Defendant Bristol-Myers Squibb Company (hereinafter, "Defendant"), asserting claims of hostile work environment, discrimination, and retaliation under state and federal statutes. In the instant matter, Defendant moves to stay the case and compel arbitration, arguing that Plaintiff is bound by the arbitration clause in the Bristol-Myers Squibb Mutual Arbitration Agreement (hereinafter, the "Arbitration Agreement" or "Agreement"). For the reasons set forth below, the Court finds that a valid arbitration agreement between the parties exists, and, therefore, Defendant's motion is **GRANTED**.

### I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff began work as a contractor for the Hopewell Medical Department Occupational Health Facility around January 2018. (Civil Action Complaint ("Complaint"), ¶ 8.) In June 2018, Defendant extended an offer to hire Plaintiff as a permanent Registered Nurse at Defendant's Lawrenceville Medical Occupational Health Department. (Complaint, ¶ 9.) An Offer Letter that

1

Plaintiff received on June 1, 2018 explained that, as a condition of Plaintiff's hire and employment with Defendant, she would be required to read, complete, and electronically sign a series of onboarding documents. (Offer Letter, at 2.) The Offer Letter specifically contained the following text conditioning Plaintiff's employment on her assent to arbitrate claims relating to the parties' relationship:

> **Employment offer conditioned on acceptance of Agreements:** In exchange for this offer of employment, the benefits outlined in this offer letter, your eligibility to participate in the BMS annual bonus plan …, and as a condition of employment, you will be required to electronically execute two Agreements, the Employee confidential information and noncompetition agreement, and mutual arbitration agreement located on the Onboarding Portal. Samples of these two agreements are also enclosed for your review as you consider this offer. Please review these agreements carefully and if you intend to become employed by BMS, electronically sign these documents once you receive the link to the Onboarding Portal prior to your first day of work. Although your electronic signature on the Agreements is required, if you begin employment with the company without signing the agreements, you will be deemed to have accepted the terms of both Agreements and this offer letter. Your offer letter should be signed and returned to BMS on your first day of employment as instructed below. (*Id*.)

The Offer Letter provided Plaintiff until June 6, 2018 to accept it, but Plaintiff electronically signed it on June 1, 2018, the day she received it. (Declaration of Helen Baus in Support of Defendant's Motion to Compel Arbitration ("Baus"), ¶ 3.) Although the Offer Letter states that a sample of the Arbitration Agreement would be enclosed, Plaintiff alleges that it did not come with any such sample of the Agreement. (Certification of Bernadette Montgomery ("Montgomery"), ¶ 7.) Plaintiff alleges that she was not offered access to the Arbitration Agreement until June 11, 2018, when it became available on an online portal. (Montgomery, ¶ 8.) That same day, June 11, 2018, Plaintiff electronically signed the Arbitration Agreement. (Baus, ¶ 4.) In doing so, Plaintiff accepted the following terms agreeing to resolve all covered disputes with the Defendant by arbitration:

> [A]ll disputes, claims, complaints, or controversies ("Claims") that you have now, or at any time in the future may have, against Bristol-Myers Squibb Company… including claims relating to… wrongful discharge, discrimination and/or harassment claims, retaliation claims… and any other claim under any federal, state or local statute… arising out of and/or directly or indirectly related to your application for employment with the Company, and/or your employment with the Company, and/or the terms and conditions of your employment with the Company, and/or termination of your employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Agreement and will be resolved by arbitration and NOT by a court or jury.  THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS.  (Arbitration Agreement, ¶ 1a.)

Other relevant sections of the Arbitration Agreement cover the fees and costs of arbitration:

> f.  The arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in court, including attorney's fees and costs.  Thus, for example, you shall be entitled to recover attorney's fees and costs in any arbitration in which you assert and prevail on any statutory claims to the same extent as you could in court.  (*Id.*, ¶ 4f.)
> …
> a.  In the event you file a claim under this Agreement, you will pay $200.00 towards any JAMS or AAA filing or administrative fee ("filing fee") and the company will pay any amount in excess of the filing fee.
> b.  The Company will pay any other JAMS or AAA administrative fees, the arbitrator's fees, and any other administrative fees and costs of the arbitration forum.  (*Id.*, ¶¶ 5a-5b.)

Plaintiff began work for Defendant on June 25, 2018.  (Baus, ¶ 4.)  Plaintiff claims that, due to her advanced age, she was subject to disparate treatment by her coworkers and Defendant's management. (Complaint, ¶ 14.)  Plaintiff alleges that she witnessed other discriminatory conduct, including inappropriate comments from a coworker about gender identity and sexual orientation. (Complaint, ¶ 16.)  On August 31, 2018, Plaintiff suffered a work-related injury to her left thumb, which led to her being placed on involuntary leave, despite Plaintiff's stated belief that she could continue performing most of her job duties.  (Complaint, ¶ 23-30.)  Plaintiff sought to return to work on January 28, 2019, but was instructed to first have a teleconference with Defendant's

3

management. (Complaint, ¶ 32.) The next day, on January 29, 2019, Defendant informed Plaintiff that her employment was being terminated, purportedly because of her disrespectful conduct at work. (Complaint, ¶ 33.)

Plaintiff filed the present lawsuit against Defendant on October 9, 2019, in the Superior Court of New Jersey, Mercer County, Law Division, asserting claims for hostile work environment, discrimination, and retaliation under state and federal statutes, including the New Jersey Law Against Discrimination ("NJLAD"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act ("ADA"). On November 7, 2019, Defendant removed the case to this Court. Defendant has moved to stay the case and compel arbitration, arguing that Plaintiff's employment had been conditioned on her agreement to arbitrate future claims. In response, Plaintiff argues that the Arbitration Agreement is unconscionable, and therefore, unenforceable.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act (hereinafter, the "FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. . . .'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA was designed by Congress "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536-37 (D.N.J. 2013) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). In achieving this end, the FAA provides that contract provisions containing arbitration clauses shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration,

4

and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2-4. Collectively, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). In that connection, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Mercury Constr. Corp.*, 460 U.S. at 24-25).

Although federal law presumptively favors the enforcement of arbitration agreements, when a district court is presented with a motion to compel arbitration, it must affirmatively answer the following two questions before compelling arbitration pursuant to § 4 of the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). To determine whether a valid arbitration agreement exists, federal courts apply applicable state contract law. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). In "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### III.   ANALYSIS

The parties do not dispute that the claims at issue here fall within the scope of the Arbitration Agreement. Under the plain language of the Agreement, Plaintiff agreed to resolve through arbitration all future claims relating to her employment or termination of employment with Defendant. (Arbitration Agreement, ¶ 1a.) Each of Plaintiff's claims falls within the categories

of "wrongful discharge, discrimination and/or harassment claims, [and] retaliation claims" explicitly covered by the Arbitration Agreement. (*Id.*)

However, Plaintiff contends that the parties did not enter into a valid agreement and argues that the Arbitration Agreement is unenforceable because it is unconscionable. (Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and Stay the Case ("Pl.'s Response"), at 8). "In New Jersey, to invalidate an agreement by defense of unconscionability, a court must find both procedural and substantive unconscionability." *Khan v. Dell Inc.* No. 09–3703, 2014 U.S. Dist. LEXIS 27091, at *15 (D.N.J. Feb. 1, 2014) (citing *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992)). Additionally, "[t]he party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." *Harris*, 183 F.3d at 181. Here, Plaintiff cannot meet the burden of proving either procedural or substantive unconscionability.

### A. The Arbitration Agreement is Not Procedurally Unconscionable

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement. . . ." *Harris*, 183 F.3d at 181. An agreement is procedurally unconscionable if it was formed under unfair circumstances, taking into consideration facts such as "'lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" *Bourgeois v. Nordstrom, Inc.*, No. 11-2442, 2012 U.S. Dist. LEXIS 2275, at *16 (D.N.J. Jan. 9, 2012) (quoting *Sitogum Holdings Inc., v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002)).

Here, Plaintiff argues that procedural unconscionability "is generally satisfied if the agreement constitutes a contract of adhesion." (Pl.'s Response, at 8.) Plaintiff characterizes the Arbitration Agreement as a contract of adhesion because it was presented on a "take-it-or leave-

it" basis. (*Id.*) Similarly, Plaintiff argues that the disparity in bargaining power between herself and her employer renders the Agreement unenforceable. (*Id.*, at 9.) Defendant responds by arguing that this line of argument "plainly fails" and that courts largely enforce arbitration agreements signed without negotiation and between parties with unequal bargaining power. (Reply in Further Support of Defendant's Motion to Compel Arbitration and Stay the Case ("Def.'s Reply"), at 7.) Plaintiff further argues that she did not have a fair opportunity to read the Agreement before signing it and that she was under financial pressure to assent. (Pl.'s Response, at 10.) However, Plaintiff has failed to establish that any of these circumstances amount to procedural unconscionability.

Contracts of adhesion do not necessarily serve as proof of procedural unconscionability. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 39 (2006). The term "contract of adhesion" commonly refers to "agreements that are 'presented on a take-it-or leave-it basis, commonly on a standardized printed form, without opportunity for the 'adhering' party to negotiate. . . .'" *Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 U.S. Dist. LEXIS 43252, at *19 (D.N.J. Mar. 31, 2014) (quoting *Muhammad v. Cty. Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 15 (2006), *overruled on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011)). Plaintiff cites to *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003), for the proposition that under California law, contracts of adhesion are generally procedurally unconscionable. However, under New Jersey law, identifying a contract of adhesion only represents "'the beginning, not the end, of the inquiry into whether a contract, or any specific term therein, should be deemed unenforceable. . . .'" *Uddin*, 2014 U.S. Dist. LEXIS 43252, at *19 (quoting *Muhammad*, 912 A.2d at 96). The New Jersey Supreme Court has explained that "[t]he defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case, even when a contract of adhesion is involved." *Delta*

*Funding Corp.*, 189 N.J. at 39.  This analysis under New Jersey law requires evaluating four factors: "'(1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract.'"  *Uddin*, 2014 U.S. Dist. LEXIS 43252, at *19 (quoting *Muhammad*, 912 A.2d at 97).  If a plaintiff cannot adequately show that a contract of adhesion was unfairly signed under these additional factors, he or she fails to prove procedural unconscionability.  *Id*.

Here, there is no dispute that the Agreement is a contract of adhesion, because Plaintiff did not have the opportunity to modify it.  However, as set forth above, that alone is not conclusive of unconscionability, since New Jersey law explicitly requires a fact-intensive analysis of the specific agreement in dispute.  Therefore, at the outset, Plaintiff's reliance on *Ting*, which applies California law, that contracts of adhesion are generally procedurally unconscionable, is misplaced.  More to the point, Plaintiff does not engage in the analysis of all four factors of procedural unconscionability as required by the New Jersey Supreme Court.[1]

While Plaintiff emphasizes the disparity in bargaining power between herself and her employer, that fact does not by itself render a contract procedurally unconscionable.  *Gilmer*, 500 U.S. at 33.  Plaintiff relies on *Zimmer v. CooperNeff Advisors, Inc.*, No. 04-3816, 2004 U.S. Dist. LEXIS 25465, at *21 (E.D. Pa. Dec. 20, 2004)*, vacated by* 523 F.3d 224 (3d Cir. 2008), to demonstrate how "extreme inequality in bargaining position" can render a contract procedurally unconscionable.[2]  In *Zimmer*, an employer refused to negotiate the terms of an employment

---

[1] Plaintiff does argue, as discussed infra, that her bargaining position was relatively weak and that she was under a high degree of economic compulsion.  However, Plaintiff is unable to prove procedural unconscionability through either of these arguments.

[2] While Plaintiff cites to the district court opinion, Plaintiff neglects to mention that the Third Circuit vacated the lower court's ruling, because the court found the contract to not have been procedurally unconscionable.

8

agreement with an employee and threatened to fire the employee if he refused to sign it. *Id.* at *21-22. Although the district court found procedural unconscionability under these circumstances, *Id.* at *22, the Third Circuit vacated the lower court's decision, reasoning that the employee was not deprived of a choice to sign the agreement because his education afforded him other employment opportunities. *Zimmer*, 523 F.3d at 229-30. Plainly, Plaintiff's reliance on *Zimmer* is unpersuasive, considering that the case applied Pennsylvania law and was vacated on appeal. In fact, "[v]irtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 90 (2002). It is, therefore, clear that under New Jersey law, a disparity in bargaining power does not inherently create procedural unconscionability. *See*, *e.g.*, *Young v. The Prudential Ins. Co. of Am., Inc.*, 297 N.J. Super. 605, 620 (App. Div. 1996) (citing *Gilmer*, 500 U.S. at 33) (finding that unequal bargaining positions would not prohibit enforcement of an arbitration provision even when employees had "no bargaining power and no choice with respect to signing" the agreement). In short, the Plaintiff's lesser bargaining power is no basis to find procedural unconscionability.

Still, Plaintiff argues that the circumstances surrounding the signing of the Arbitration Agreement made the process procedurally unconscionable by depriving her of any meaningful choice to consent to its terms. (Pl.'s Response, at 9.) Primarily, Plaintiff argues that Defendant did not provide her an adequate opportunity to know what terms and conditions she was agreeing to, since the Arbitration Agreement became available online only after the Offer Letter would have expired. (*Id.*) However, Defendant argues that a sample of the Arbitration Agreement was provided with the Offer Letter for Plaintiff to review. (Def.'s Reply, at 5.) Defendant further

9

argues that even if the sample was not included, the Offer Letter informed Plaintiff regarding the Arbitration Agreement and its terms, and that Plaintiff subsequently, separately signed and accepted the Arbitration Agreement after viewing it online. (*Id*.)

An arbitration agreement may be enforceable when a new employee is made aware of its terms in an offer letter, but later receives and signs the agreement. *Jones v. Dish Network LLC*, No. A-2653-12T4, 2013 N.J. Super. Unpub. LEXIS 2849, at *12 (App. Div. Nov. 26, 2013). In *Jones*, a newly hired employee received an offer letter stating that her employment was "contingent upon the completion of all required pre-employment paperwork, including a 'Mandatory Arbitration of Disputes - Waiver of Rights Agreement.'" *Id*. at *1-2. The employee did not gain access to the arbitration agreement until her first day of work, when she signed it. *Id*. at *11. Under this set of facts, the court enforced the agreement, reasoning that the offer letter sufficiently placed the new employee on notice that signing the arbitration agreement was a specific condition of her employment. *Id*. at *12. Similarly, in *Russo v. J.C. Penney Corp.*, No. A-3116-16T1, 2017 N.J. Super. Unpub. LEXIS 3074, at *8 (App. Div. Dec. 13, 2017), the court enforced an arbitration agreement in a situation where a new employee only had the opportunity to view the agreement on her first day of work, because the court found that the employee "saw, read, and understood the Agreement" at the time it was presented to her. *See also Stowell v. Cantor Fitzgerald & Co.*, Nos. A-3010-18T3, A-3066-18T3, 2020 N.J. Super. Unpub. LEXIS 408, at *21-22 (App. Div. Feb. 27, 2020) (enforcing an arbitration agreement presented separately from an offer letter which an employee affirmatively assented to through an online signature).

In this case, even assuming, *arguendo*, that a sample of the Arbitration Agreement was not enclosed with the Offer Letter, Plaintiff has failed to show procedurally unconscionability, because the Letter sufficiently placed Plaintiff on notice that accepting a separate Arbitration Agreement

10

was a specific requirement of her employment: "as a condition of employment, you will be required to electronically execute two Agreements, the Employee confidential information and noncompetition agreement, and mutual arbitration agreement located on the Onboarding Portal." (Offer Letter, at 2.)[3]  That Plaintiff read the Agreement online after receiving her offer letter is of no moment; as stated above, New Jersey courts routinely enforce arbitration agreements in this after-the-fact situation.  Furthermore, Plaintiff does not argue that she lacked a fair opportunity to read or understand the Arbitration Agreement itself once it became available on the online portal.  In fact, Plaintiff electronically signed it on June 11, 2018, the same day it became available for her to view, notwithstanding the deadline to sign it was two weeks later, on June 25, 2018, her first day of employment.  (Baus, ¶ 4.)  Therefore, Plaintiff's electronic signature on the Arbitration Agreement suffices as her assent necessary to create a binding and enforceable contract.

Finally, Plaintiff argues that the Arbitration Agreement was procedurally unconscionable, because she would have lost her job by refusing to sign it.  (Pl.'s Response, at 10.)  Due to this pressure, Plaintiff argues that she could not have truly assented to the terms.  (*Id.*)  In reply, Defendant contends that Plaintiff did not lack meaningful choice since she would not have lost her prior contract job by refusing to sign the Agreement.  (Def.'s Reply, at 7.)  Additionally, Defendant argues that courts routinely enforce arbitration agreements that are a condition of employment and that procedural unconscionability requires more extreme pressure than an employee's ordinary need for an income.  (*Id.*, at 8.)

Plaintiff bases her meaningful choice argument on one principal case, *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256 (3d Cir. 2003).  In *Alexander*, two construction crane operators

---

[3] The Offer Letter also provides notice of the content of the Arbitration Agreement: "This Agreement requires both BMS and you to agree to bring any employment-related disputes in arbitration rather than in court. . . ."  (Offer Letter, at 2.)

11

in the Virgin Islands raised the unconscionability defense to an arbitration agreement that their employer required them to sign. *Id*. at 261. The workers were from Saint Lucia, had less than an eighth-grade education, and were unable to pay the arbitration fees. *Id*. at 258-59, 261. The court found the agreement procedurally unconscionable because the plaintiffs' "limited educational backgrounds and, at best, very narrow options for other employment" denied them any real choice but to sign the contract. *Id*. at 266. In line with the Third Circuit view, in New Jersey, a defense of procedural unconscionability is not availing to "every employee who needs the job," but "only upon circumstances substantially more egregious than the ordinary economic pressure." *Young*, 297 N.J. Super. at 621; *see also Riley v. Raymour & Flanigan*, No. A-2272-16T1, 2017 N.J. Super. Unpub. LEXIS 2651 at *6-7 (App. Div. Oct. 20, 2017) (denying former furniture salesperson's economic duress defense to enforce an arbitration agreement). Furthermore, courts have enforced arbitration agreements when employees accept a job under heightened financial stress. *See Jones*, 2013 N.J. Super. Unpub. LEXIS 2849, at *1 (enforcing an arbitration agreement signed by a new employee who had previously been unemployed and homeless); *Pyo v. Wicked Fashions, Inc.*, No. 09-2422, 2010 U.S. Dist. LEXIS 32746, at *13 (D.N.J. Mar. 31, 2010) (rejecting an employee's argument that being unemployed with substantial student loan debt made his signing of an arbitration agreement for a job procedurally unconscionable).

      Plaintiff, in the present case, does not raise any extraordinary circumstances of financial duress. The typical pressure on an employee to earn an income is not sufficient to render an employment contract requiring arbitration unenforceable. Although Plaintiff might have lost her opportunity to work for Defendant by rejecting the Arbitration Agreement, this alone does not support a duress defense. In addition, Plaintiff does not claim to have a limited education or minimal employment alternatives like the workers in *Alexander*. In fact, Plaintiff's experience as

a registered nurse indicates that she has the medical background to put her on firm footing to seek work with other medical employers. Also, Plaintiff does not claim that she would have lost her previous contract job if she had refused to work for Defendant; in other words, Plaintiff did not lack a choice to sign the Arbitration Agreement.

In conclusion, Plaintiff has failed to prove procedural unconscionability. Although the Arbitration Agreement was a contract of adhesion and Plaintiff had lesser bargaining power than Defendant, these facts do not make the Agreement unenforceable. Additionally, Plaintiff was not unfairly denied an opportunity to read the contract or a choice over whether to sign it. Since the contractual defense of unconscionability requires demonstrating *both* procedural and substantive elements, Plaintiff's challenge to the motion to compel arbitration fails on this basis alone. However, the Court will continue to analyze the elements of substantive unconscionability for purposes of completeness.

### B. The Arbitration Agreement is Not Substantively Unconscionable

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris*, 183 F.3d at 181. "New Jersey courts may find a contract term substantively unconscionable if it is 'excessively disproportionate' and involves an 'exchange of obligations so one-sided as to shock the court's conscience.'" *Agrabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 481 (D.N.J. 2017) (quoting *Delta Funding Corp.*, 189 N.J. at 55). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum. . . .'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007).

Here, Plaintiff argues that the Arbitration Agreement unconscionably favors Defendant and would make arbitration "prohibitively expensive considering Ms. Montgomery's limited means." (Pl.'s Response, at 13.) She maintains that the Agreement could require her to pay Defendant's costs and fees, which would effectively prohibit her from pursuing her case. (*Id*.) Defendant replies that Plaintiff mischaracterizes the content of the Arbitration Agreement, and claims that its terms are actually more favorable to Plaintiff. (Def.'s Reply, at 11.) The Court finds that the terms of the Arbitration Agreement are not overly favorable to Defendant and do not limit the rights and remedies available to Plaintiff in arbitration.

"A party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003) (citing *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). "The mere existence of cost-splitting or cost-sharing provisions in an arbitration agreement does not satisfy this burden." *Shapiro v. Baker & Taylor, Inc.*, No. 07-3153, 2009 U.S. Dist. LEXIS 48187, at *21-22 (D.N.J. June 9, 2009); *see also Jaworski v. Ernst & Young US LLP*, 441 N.J. Super. 464, 482 (App. Div. 2015) (enforcing an arbitration agreement that split arbitrator fees and costs equally between employees and their employer). Even when costs are "significant and unpleasant," an arbitration agreement may not be substantively unconscionable as long as arbitration is not "prohibitively expensive." *Shapiro*, 2009 U.S. Dist. LEXIS 48187, at *27. However, an arbitration agreement that requires the losing party to pay exorbitant arbitrator's fees and expenses in full may be, in certain situations, substantively unconscionable. *See, e.g.*, *Alexander*, 341 F.3d at 268 (finding an arbitration agreement substantively unconscionable that would require a losing party to pay the costs of arbitration estimated between $800 and $1,000 per day).

The Arbitration Agreement, here, is not substantively unconscionable, because Plaintiff did not demonstrate that its terms would make arbitrating her claim prohibitively expensive. The party challenging an arbitration agreement has the burden of showing the likelihood of it being prohibitively expensive, and Plaintiff's unsupported conclusion of unaffordability has failed to satisfy that burden. In fact, the terms of the Arbitration Agreement are financially favorable to Plaintiff, because she would only be required to pay a $200 filing fee, with Defendant assuming all other administrative and arbitrator's fees. [4] (Arbitration Agreement, ¶¶ 5a-5b.)

Finally, contrary to Plaintiff's position, the Arbitration Agreement does not demand Plaintiff to pay Defendant's arbitration fees in the event she loses in arbitration. In that regard, Plaintiff misinterprets the part of the Agreement that reads, "[the] arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in court, including attorney's fees and costs." (Arbitration Agreement, ¶ 4f.) This provision does not mean that Plaintiff would be liable for Defendant's legal fees if she lost in arbitration. Nothing in this provision alters the general American Rule that each side pays its own attorney's fees absent an explicit exception. *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (emphasizing the scarce exceptions to the American Rule). Rather, for example, some state and federal civil rights legislation, like the New Jersey Law Against Discrimination, award attorney's fees to a prevailing plaintiff, but not to a prevailing defendant, absent a bad faith claim. N.J.S.A. § 10:5-27.1. The Arbitration Agreement simply tracks this remedy as it would if the matter was brought in court. Accordingly, since Plaintiff cannot demonstrate that the cost of pursuing her

---

[4] Indeed, that $200 filing fee is less than this District Court's $400 fee for filing a complaint.

claims in arbitration would be prohibitively expensive, she is unable to show substantive unconscionability on this basis.

Plaintiff's final argument is that the Arbitration Agreement is substantively unconscionable, because it denies her the "appropriate judicial forum" to hear her case. (Pl.'s Response, at 13.)  Plaintiff also suggests that arbitration is not a valid alternative when it limits a party's remedies or "fails to specify that it covers statutory claims." [5] (*Id*. at 12.)  Defendant responds that the language of the Arbitration Agreement is "more than sufficient to satisfy the requirements of enforceable waiver-of-rights provisions under New Jersey law," and argues that Plaintiff does not identify any specific terms of the Agreement that are substantively unconscionable. (Def.'s Reply, at 12-13.)

An arbitration agreement does not deny a plaintiff an appropriate forum simply because it limits a party's ability to bring a case in court.  *Gilmer*, 500 U.S. at 26.  "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Id*.  "'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'"  *Delta Funding Corp. v. Harris*, 396 F. Supp. 2d 512, 520 (D.N.J. 2004) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)).  "[T]he strong federal and state policies in favor of arbitration defeat any claim merely premised upon the alleged unfairness of the normal procedures utilized in the arbitral forum."  *Id*.  Still, an arbitration agreement may be found substantively unconscionable if it limits the remedies an arbitrator can

---

[5] Plaintiff also argues that "[a]rbitration of statutory claims is effective only when the broader social purposes behind the statute are adhered to." (Pl.'s Response, at 12.)  However, Plaintiff does not discuss any public policies harmed by this specific Arbitration Agreement. Accordingly, this position does not provide a reason for finding the Agreement's terms to be substantively unconscionable.

16

provide.  *Hall v. Treasure Bay V.I. Corp.*, 371 Fed. App'x 311, 314 (3d Cir. 2010).  Additionally, arbitration may not be an appropriate forum if an agreement fails to specify that it covers statutory claims.  *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 135 (2001).  However, an enforceable arbitration agreement does not need to "list every imaginable statute by name" but "should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination."  *Id.*; *see also Sarbak v. Citigroup Global Mkts., Inc.*, 354 F. Supp. 2d 531, 538 (D.N.J. 2004) (compelling arbitration after deciding that the following language unmistakably covers statutory claims: "The disputes to be arbitrated include, without limiting the generality of the forgoing, claims, demands or actions under . . . any other federal, state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment. . . .").

  Here, the Arbitration Agreement neither requires Plaintiff to forego any substantive remedies, nor does it inadequately describe that statutory claims are covered by the agreement.  First, the Arbitration Agreement does not preclude Plaintiff from obtaining any remedies she would otherwise be entitled to in court, by providing that "[t]he arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in court."  (Arbitration Agreement, ¶ 4f.)  Second, the language in the Arbitration Agreement clearly specifies that it covers statutory claims and leaves no ambiguity that Plaintiff has waived her right to bring statutory claims in court.  The relevant section states that "any other claim under any federal, state or local statute. . .  arising out of and/or directly or indirectly related to your application for employment with the Company" would be subject to arbitration.  (Arbitration

17

Agreement, ¶ 1a.).[6] There can be no doubt that the language of the Arbitration Agreement covers the type of claims Plaintiff brings in this case.

In summary, Plaintiff is unable to demonstrate that the terms of the Arbitration Agreement are unreasonably favorable to Defendant. Therefore, the Agreement is not substantively unconscionable. Plaintiff has not met her burden of showing that the Arbitration Agreement's terms would make arbitration prohibitively expensive for Plaintiff. Also, the terms do not unfairly deny Plaintiff an appropriate forum to hear her claims. Since Plaintiff has failed to successfully assert the defense of unconscionability, the Court will enforce the terms of the Arbitration Agreement and compel arbitration.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is **GRANTED**, and it is further ordered that the parties are to arbitrate Plaintiff's claims consistent with the parties' Arbitration Agreement; and it is further ordered that the action is stayed, pending arbitration.

Dated: June 15, 2020                                /s/ Freda L. Wolfson
                                                    Freda L. Wolfson
                                                    U.S. Chief District Judge

---

[6]     The Arbitration Agreement leaves no possible question about limiting the right to a federal trial by stating: "THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS." (Arbitration Agreement, ¶ 1a.)